Case No. 19-2321, Cassiano v. United States. Mr. Perry, good morning, please proceed. Good morning, Your Honor, and may it please the Court. I'm Jason Perry, representing the appellants Ms. Cassiano and Ms. Barrett. The Public Health Service found Ms. Barrett unfit for her degenerative joint disease of both knees, utilizing Diagnostic Code 5003. However, her knees were so disabling that while on the Temporary Disability Retirement List, she had a total knee replacement of both knees. The minimum rating under 38 CFR 4.71a Diagnostic Code 5055 for prosthetic knee replacements is 30%. The trial court found that the government argued that the UPS did not err because of various factors such as findings that her knee replacements had improved her ability to perform the duties of her civilian position, her testimony that the pain she experienced had lessened, and that the records indicated that she was healing very well with a good range of motion. Mr. Perry, what relief are you requesting for this appellant now that, as I understand the records, the disability retirement was granted? You're going through the arguments that, as I understand it, related to the initial opinion, initial decision to withhold the retirement? I'm sorry, Your Honor? What relief are you now asking for? I'm sorry. Ms. Barrett was not granted any retirement. Ms. Cassiano was on the remand. So this is as the Ms. Barrett's knee condition, which she got no support below. Oh, okay. All right. Okay. I had the two intermingled. So what relief are you then requesting for Ms. Barrett? A finding that her knee replacements warrant at least a 30% for each knee bilaterally, which would combine to a 60% rating and permanent disability retirement. Among other reasons that the court found no error in not rating for the knee replacement is that the medical affairs board explained that the records indicated that she was healing very well with good range of motion, and she did not have any current work limitations at her job. And that's from the opinion at Appendix 22. However, 10 U.S. Code 1222-Alpha requires the services to strictly apply the VA schedule for rating disabilities, sometimes called the VAS or D, and not deviate from that schedule. The schedule requires that minimum of 30% for each knee bilaterally. There's no requirement under the regulation that a knee replacement fails to improve function or doesn't help the member. It's just a baseline black letter requirement that if you have a knee replacement for a knee disability, you'll be rated at the minimum of 30%. It was error for the public health service and for the court to find an issue with no one, which is part of the VA schedule binding on the public health service, I quote, the percentage ratings represent as far as can practically be determined the average impairment in earning capacity resulting from such diseases. Generally, the degree of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. What's important here is that the average impairment, so it's not specific to the individual how they're impaired. The reason why they have the schedule is because some will be more impaired or less impaired by a condition, but as practical as possible, the VA secretary has determined that for knee replacements, the disability rating based on the impairment is 30%. My colleague, Mr. Gamaldi notes in his briefing that the not all conditions in the VA schedule the member has are actually unfitting. A person can have a condition, but it doesn't mean they impact their ability to perform their military duties. The problem with that argument though, is that the public health service actually found her knee conditions to be disabling. So, that issue is resolved because once the condition is found unfitting, the public health service must use the VA schedule and rate her at 30%. Turning to Ms. Cassiano and her request for a further increase in rating, and as you know, below she received an increase of 40%. She's asking the court to find that the denial of an increased rating beyond that, based on separately rating each condition, should be error, and that should be corrected, and she should be re-rated. We know the VA found her at 90% for all of her conditions. Well, that's really what I found confusing. You're not suggesting that the award of disability retirement should be withdrawn, and that this should be substituted for it? Right. The Board for Correction of Commissioned Corps Records found that she's warranted the 40% rating based on the scheduler finding for fibromyalgia. However, as we argued from the very beginning at the formal hearing before the public health service, all the way through all proceedings, and we attempted to on remand, that her conditions should be rated separately as to the generalized anxiety disorder and the separation of the fibromyalgia into the most favorable finding. Counsel, this is Judge Stoll. I just had one quick question about that. Where did you raise the issue of whether she should be separately rated for each joint below? Did you raise that issue below? Yes, Your Honor. In our briefs, it came out the issue of pyramiding didn't, and which was the basis for the denial, the low-cost denial, basically was on the issue of pyramiding. Well, I see where the Board doesn't expressly address whether Ms. Casiano should be separately rated for each joint. I don't see that in the Board's decision. So I'm wondering whether you raised the argument. That's what I want to know. Originally on remand. Specifically, I want to make sure I'm being very clear. I want to know if you raised the issue of whether Ms. Casiano should be separately rated for each joint. Initially at the very first hearing, her formal Board, so to speak, we raised the issue of we asked for a rating separately for the fibromyalgia and separately for the generalized anxiety disorder. On appeal to the Board for Correction after remand from the trial court to the Board for Correction of Commissioned Coral Records, we requested and we submitted a copy of the VA ratings and asked them to consider that. And as you can see from our addendum to the reply brief, the Board for Correction of Commissioned Coral Records declined to consider that additional argument or the additional evidence of the VA rating her separately in that manner that we're urging. The manner in which you're urging which is? Just as the VA did to rate the fibromyalgia at each orthopedic condition separately and then as to the generalized anxiety disorder. So, they're all features of the fibromyalgia. However, just as the VA did in the decision that submitted, that's at our addendum 10, VA stated, we have separately evaluated your condition affecting your musculoskeletal system. This results in a greater benefit. And then they break out your left knee, right knee, right foot, left foot. Counsel, hang on. I'm sorry. I'm going to interrupt you. Where are you? I think you're pointing me to a particular place in the record. Could you tell me where you're identifying? Our appellant's reply brief, the addendum 10. Okay. And if you see, Lana, there's a box there, the first large box, the very last bullet there breaks out that the VA decided to consider her fibromyalgia. They rated her at zero percent because a higher evaluation would result in the 40 percent that the schedule for fibromyalgia directly would award. So, it's advantageous to separate the diagnosed disabilities for the higher evaluation. That's the proper approach the VA used in interpreting its own regulation. So, it's the last bullet point in that box that you're referring to that you think shows that you made the argument to the board that each joint should be rated separately. Yes, Your Honor. Okay. Thank you. So, and again, the import of that, not to go over the same ground, but that shows that the VA, that this was not pyramiding because that's how the VA actually dealt with this condition. And one of the points we raised that, another reason why it's not pyramiding is we're not asking to be compensated twice for the same disability. We're asking for each feature, symptomology, that does not overlap to be separately rated, which is not pyramiding. The, excuse me, Your Honor. This issue of pyramiding, again, came up for the first time after oral argument on our briefs for supplemental briefing after oral argument. And the, you know, again, the VA rating showed that it's not pyramiding because of the way that the VA actually approached the issue. The, and just to be clear, they rated, the VA rated the fibromyalgia at zero and then rated the left knee, right knee, right foot, left foot, and neck conditions separately. The, and the generalized anxiety disorder at 50% by itself. The, as far as the travel pay, we note that the problem with the issue of not rightness that the court below used at appendix 17 to deny the claim is that there was no claim for reimbursement. However, as we explained, the process doesn't allow for that at all. They simply rely on the, on the commission core personnel manual 47 for the proposition that there's no authority in which to grant that. However, there is authority, as we've argued, under the joint federal travel regulation, as well as 37 U.S. Code 452. So the first point is that there is actually authority for that. The next is that, next issue here is that the government argues that it's not official travel because the members are not on orders. But that's, again, the same problem. They don't get, they don't get orders. And so the claim is denied, but there's no way to get that if they are entitled to it, just because of the simple denial. Mr. Perry, this is Judge Lynn. Did your client submit a request, a claim for travel? They did not, Your Honor. When Ms. Barrett did not actually travel, so this really applies more to Ms. Caziano. But when I appeared with her at the board, we inquired about that. And again, we were told there's no process, you're not going to get it. So it's that procedural error in not having a process to do it makes it impossible for her to actually do it. And if she's entitled to it, she should be able to receive those monies. But she never filed a claim? She's unable to because there's no process, Your Honor, but that's correct, yes. Just to be clear, I'm still troubled by trying to figure out the relief you're requesting. For Ms. Barrett, you're requesting travel reimbursement even though she didn't travel. And for Ms. Caziano, that is the only relief that's now being requested? After the temporary duty travel, yes, Your Honor. She requests that reimbursement for it. It requires the issuance because the government's correct that there does need to be an order. However, if an order should issue, then it's possible to go back now and retroactively submit that and receive those monies. All right. I think we're ready to hear from the other side. Any more questions at the moment from the panel? No, thank you. Okay. Then Mr. Grimaldi. Good morning, Your Honors. May it please the Court. Your Honors, Ms. Caziano and Ms. Barrett served honorably in the Commissioned Corps until their respective disabilities rendered them unfit for continued service. The record shows that the Commissioned Corps provided Ms. Barrett with a disability rating that was commensurate with the disability that rendered her unfit and Ms. Caziano the same following the remand. Ms. Barrett received over $200,000 in separation pay, and Ms. Caziano, who originally received about the same amount, is now having that converted into a disability retirement. Through this argument, through the appeal, plaintiff's appellants are not only questioning the individualized ratings they received, but the disabilities that rendered them unfit. And this can really be seen in the argument today regarding Ms. Barrett's condition. The argument that is being presented is that her knee replacement surgery rendered her unfit for service and then must be rated and provided a disability rating based upon that. Going back to the statute here, Your Honors, because this is not a VA benefits case, we are not looking about whether or not these individuals have a condition service connected to their service that is impacting their employment in the civilian side. We are looking at 10 U.S.C. 1201, which is the disability retirement statute that says that this rating here, what they get, what the Army is doing here for retirement, is checking to see whether the individual is unfit to perform because of a physical disability. That is what is rated. If you look, Your Honors, at Appendix Page 4011, this is the disability manual for the Commissioned Corps. Again, we're looking and rating what rendered the individual unfit. It specifically requests a cause and effect between the disability and the finding of unfitness. In Ms. Barrett's case, in 2009, she reported experiencing degenerative knee problems. In 2011, this was brought before a medical evaluation board and a medical review board. At that point, she had not had surgery. She was placed on temporary disability because of a knee degeneration problem. This is Appendix Page 542. The next we can see is in Appendix Page 551. This is the second time she's before a review board. Again, we're talking about needing surgery, not having surgery yet. Again, she's found to be temporarily disabled. On Appendix Page 591, she's had her left knee surgery in October 2013, and that she's looking forward to getting a right surgery because it will help with the pain that she's experiencing. What we're seeing here, Your Honors, and all the evidence that the record shows is that the condition that rendered her unfit to serve as a nurse in the Commissioned Corps was degenerative knee disease. The knee surgery was meant to ameliorate that. It was a fix. And as the lower court went through the evidence, it did that. It helped her, but not enough that she could be deployed internationally and so on and so forth. So she was rendered unfit because of the degenerative knee disease, not because of the knee surgery. Accordingly, the Commissioned Corps properly gave her a rating for that degenerative knee disease and a separation based upon it. I would note that in this argument plaintiff appellant state that I think it was a misspoken here, but it's 10 U.S.C. 1216a says that the uniformed services must strictly apply the ratings from the VASR. That is not true. It says to the extent feasible in Section A. So there is no strict applying of the VASR requirement in the statute. Turning to Ms. Castellano, Your Honors, I think there's some confusion here as to what relief Ms. Castellano is looking for in terms of her disability. Not the travel pay. I'll get to that in a moment. But the relief that she is seeking. What she is seeking is a 0% rating for fibromyalgia and a rating for the symptoms instead. That is anti-pyramiding. That is a pyramiding problem because what that is indicating is that she has fibromyalgia. We're going to rate it 0% and then we're going to rate her symptoms. Is it overlapping? Yes. Anxiety is under fibromyalgia. So giving her a rating of anxiety alone and also saying she has fibromyalgia is saying that she has overlapping symptoms there. In regards to the VA materials that were provided in the reply brief and the question of whether or not the joint pain for Ms. Castellano was raised to the Commission Corps, the record shows that it was not originally raised to the Commission Corps. It was raised for the first time by the provision of the VA materials on remand after the United States had already received judgment on the record on the anti-pyramiding issue. So the issue of whether or not Ms. Castellano could receive separate ratings for her joint pain was not before the Commission Corps at the time of the remand. So we do not believe that this issue had been raised, I guess, to the Commission Corps in the first instance. It's only the issue of anxiety. But still, the Court of Federal Claims did address that. If your honors have no further questions about the disability ratings themselves, I can turn to the travel pay and state briefly that we understand their argument to be that it's sort of circular here, that there is no way to ask for travel pay because the Commission Corps doesn't pay for it. Well, your honor, the Commission Corps doesn't pay for it because it is not temporary duty travel. There's no order provided for these officers to attend the MAB because the MAB is not mandatory. To the extent that plaintiff appellants are arguing that the Commission Corps errors by not providing orders for its officers to attend the MAB, they must point to some sort of statute or regulation that requires it. And they simply have done that. If the Court has no further questions, we respectfully request that the Court affirm the decision of the Court of Federal Claims. Any more questions for Mr. Grimaldi? No, thank you. No, thank you. Thank you. And Mr. Perry, you have your rebuttal time. Judge Newman, this is Jennifer. I'm sorry to interrupt. Mr. Perry doesn't have any rebuttal time left, so I just wanted to see how much time I should put... No, give him his full rebuttal time. Okay, thank you. Thank you, your honor. Addressing the point about temporary duty, we want to draw the Court's attention to the appellee's brief addendum, page eight, where it describes temporary duty. And at section two, it says, temporary duty defined as that period spent at a location while processing for separation from the service, release from active service. At page nine of the same addendum, temporary duty travel is travel to one or more places away from a permanent duty station to perform duties for a period of time, and upon completion of assignment, return or proceed to a permanent duty station. So by the appellee's own brief and addendum, the travel to the formal board by the appellant is actually shown to be the... Turning briefly to the issue of the pyramiding and whether or not, again, by rating the condition separately, it is pyramiding. We note that under 38 CFR 4.7 is a higher of two evaluations, which requires the VA and, by reference, and I thank my brother Gamaldi for pointing out tenuous code 1216 as a proper site. The issue is what generates the higher rating. And so using that methodology and by application of 4.7, you end up with the separate rating of each condition in the same manner that the VA performed. And if there's any more questions, I'm happy to answer, and if not, we tender the case. Any more questions from the panel? No, thank you. Okay, thank you. Thanks to counsel for both sides. The case is taken under submission.